IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRENDA JOHNSON,

        Plaintiff,

vs.                                                                                         No. CIV 96-0760 JP/JHG

WAL-MART STORES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The subjects of this Order are: (1) "Defendant's Motion for Judgment as a Matter of Law, for a New Trial or in the alternative Remittitur," (Doc. No. 45 ) filed June 5, 1997; (2) Plaintiff's "Request for Leave of Court to File Surreply," (Doc. No. 58) filed July 18, 1997; and (3) Plaintiff's "Motion to Amend Judgment," (Doc. No. 51) filed June 18, 1997. After thoroughly considering the pleadings, law, facts, and arguments of counsel, I conclude that defendant's motion should be denied and plaintiff's motion for leave to file a surreply should be denied. Before I can decide plaintiff's motion to amend the judgment, the parties will have to provide additional information.

Background

Plaintiff Brenda Johnson sued defendant Wal-Mart Stores, Inc. alleging that injuries she sustained when she slipped and fell in a Wal-Mart store were proximately caused by Wal-Mart's negligence. Ms. Johnson claimed that she slipped on an Icee drink that had been spilled on the floor. The matter was tried to a jury on May 15 and 16, 1997. The jury returned a special verdict finding Wal-Mart 100% negligent and awarding Ms. Johnson $407,603.29 in damages.

Wal-Mart's Motion for Judgment as a Matter of Law, New Trial, or Remittitur

Wal-Mart moves for judgment as a matter of law or for a new trial under Federal Rule of Civil Procedure 50(b). I may grant Wal-Mart's motion "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party. A motion for a judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict." Weese v. Schukman, 98 F.3d 542, 547 (10th Cir. 1996) (internal quotations and citations omitted).

Here, Wal-Mart argues that Ms. Johnson failed to provide evidence that Wal-Mart breached any duty to her. The pertinent part of Jury Instruction No. 4 read as follows:

> To establish the claim of negligence on the part of the defendant the plaintiff has the burden of proving at least one of the following contentions:
>
> 1. That defendant failed to exercise ordinary care to keep its premises safe for use by the plaintiff.
>
> 2. That defendant failed to make reasonable inspections of its premises and to correct any dangerous condition existing on the premises of which defendant had knowledge or of which it would have had knowledge if it had performed a reasonable inspection.

At trial, there was sufficient evidence from which a reasonable jury could have found that Wal-Mart breached its duty to Ms. Johnson. For example, there was testimony that when Ms. Johnson slipped on the Icee, the drink was no longer in its iced form, but had melted into a liquid. Tr. at p. 32. Todd Evans testified that he was in the area of the store where Ms. Johnson fell for approximately 15 minutes prior to her fall and that he did not see anyone with an Icee enter that area. Although there are other possibilities, the jury could have reasonably concluded that, because the Icee

was in a liquid form when Ms. Johnson slipped on it, and because Todd Evans did not see anyone with an Icee in the area in the 15 minutes prior to the fall, the Icee had been on the floor for a long time.  Even if, as Wal-Mart contends, it conducted regular safety inspections, the jury could have concluded that such inspections were performed negligently, allowing a spilled Icee to melt on the floor and remain there until Ms. Johnson slipped on it.  From this evidence, the jury could have concluded that Wal-Mart failed to keep its store safe for use by customers, such as Ms. Johnson.

Furthermore, Selene Azzara, a Wal-Mart employee, testified that employees had been instructed to ask any customer seen consuming an Icee in an area of the store other than the concession stand to return to the concession stand but, if the customer refused, the employees were not to press the issue.  Tr. at p. 58.  Notwithstanding other possibilities, from this evidence the jury could reasonably infer that Wal-Mart was aware of the danger spilled Icees could present throughout the store and, as discussed above, failed to make sufficient inspections.

Wal-Mart argues that it exercised reasonable care because it continually performed "safety sweeps"[1] and "zone defenses."[2] The evidence, though, is not as compelling as Wal-Mart characterizes it. Scott Dragoo, a management employee with Wal-Mart testified that the Wal-Mart stores in Albuquerque conducted "zone defense" sometime between 1:00 and 3:00. Tr. at p. 190. In response to a note from the jury, the jury was informed that Ms. Johnson fell at approximately 1:30 p.m. The jury could have reasonably concluded from the evidence that a zone defense had not been performed for nearly 24 hours immediately preceding Ms. Johnson's fall. Even if a zone defense had been conducted at a time nearer to Ms. Johnson's fall, the jury could have reasonably concluded that Wal-Mart did not discharge its duty by conducting a zone defense because, based on Mr. Dragoo's

---

[1] Wal-Mart management employee Scott Dragoo described a safety sweep as follows:

> [W]hen we call for a safety sweep, a stockman or another associate generally takes a broom and goes around all the main action alleys and goes anyplace where someone calls his attention to, let's say, for cardboard or whatever. But it also involves more than just sweeping the floor.

Tr. at p. 189.

[2] Scott Dragoo described the "zone defense" as follows:

> Zone defense is much more involved [than a safety sweep]. It takes much longer where a safety sweep might take ten minutes in the store to adequately complete it. Zone defense – a good zone defense could take an hour to several hours depending upon the condition of the store, the time of day, how torn up the store is because it involves, also, replacing of merchandise, return merchandise, getting merchandise back where it belongs, getting shopping carts that may have been abandoned in the store, empty up front or with merchandise that customers may have abandoned on the store, getting that back onto the counters.
>
> Zone defense is just much more involved, but also, too, I guess a safety sweep would always be a part of zone defense. Because when we're done with the zone defense, the store should be as accident potential free after a zone defense as it could possibly be.

Tr. at p. 189-90.

testimony, the focus of a zone defense was on restocking merchandise and not on looking out for spilled Icees.

Next, Wal-Mart argues that Ms. Johnson failed to provide evidence that any breach of duty by Wal-Mart caused her to fall. In sum, Wal-Mart's argument is that there was no evidence that Ms. Johnson slipped on a spilled Icee. Ms. Johnson, however, testified that she slipped and fell on an Icee and discussed how, after her fall, she determined that the substance on which she slipped was an Icee. Tr. at pp. 79-82. Other witnesses, such as Selene Azzara and Todd Evans, testified that there was liquid on the floor where Ms. Johnson slipped and fell. This testimony provided sufficient evidence from which a reasonable juror could conclude that Ms. Johnson met her burden of proof relating to proximate cause.

Wal-Mart next contends that Ms. Johnson is at least contributorily negligent because she breached her duty to keep a proper lookout. The evidence does not support Wal-Mart's position. While Ms. Johnson was required to "actually see what was in plain sight or is obviously apparent to one under like or similar circumstances," Jury Instruction No. 10, the evidence demonstrated that Ms. Johnson, Mr. Evans, and Ms. Azzara were all in the vicinity of the fall prior to its occurrence and none of them saw the spilled Icee on the floor before Ms. Johnson slipped and fell. The jury found that Ms. Johnson was not negligent. In light of the evidence that no one saw the spilled Icee prior to the fall, the jury's rejection of Wal-Mart's argument that Ms. Johnson, a customer, did not keep a proper look out was completely reasonable.

Finally, Wal-Mart argues that a new trial is warranted because the jury's award of $407,603.29 is so excessive that it raises an inference of passion and prejudice. In the alternative, Wal-Mart argues for remittitur. Neither of Wal-Mart's requests is appropriate. The evidence showed

that Ms. Johnson had a life expectancy of approximately 41 years from the date of her injury. Dr. Jeffrie Felter testified by videotaped deposition that Ms. Johnson's knee would never be the same as it was before her injury. Additionally, he stated that the best he, as a physician, could hope for would be that Ms. Johnson would experience "[p]ain with activity but not disabling." Felter Deposition at p. 31, l. 17-19. Ms. Johnson has undergone two knee surgeries as a result of her fall at Wal-Mart. She wears a knee brace and is in frequent pain. She cannot perform certain activities that she was able to perform before she suffered her injury. The jury's award amounts to less than $10,000 per year from the date of Ms. Johnson's injury through her projected life span. In light of the evidence adduced at trial, the award was not excessive. I will not grant Wal-Mart's motion for a new trial or for remittitur.

<u>Ms. Johnson's Request for Leave to File a Surreply</u>

Ms. Johnson seeks leave of court to file a surreply, arguing that Wal-Mart did not fairly characterize the evidence in its reply. I presided over the trial and have a copy of the trial transcript. I am familiar with the evidence. Ms. Johnson's surreply is unnecessary.

<u>Ms. Johnson's Motion to Amend the Judgment</u>

Ms. Johnson seeks to amend the judgment to include, among other things, an award of prejudgment interest under New Mexico Statutes Annotated § 56-8-4(B). That section provides:

> The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things: (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claim; and (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Wal-Mart does not contend that Ms. Johnson was the cause of an unreasonable delay in the adjudication of her claims but argues that she is not entitled to prejudgment interest because Wal-

Mart made a reasonable and timely offer of settlement.

From the briefing on this motion, it appears as if Ms. Johnson, at some point demanded $75,000 in settlement of this case. Wal-Mart responded with an offer of $30,000. On December 17, 1996, counsel for Wal-Mart wrote to United States Magistrate Judge Joe H. Galvan and informed Judge Galvan that Wal-Mart "declines to pay any money in settlement of this case." Counsel for Wal-Mart also wrote in that letter, however, that Wal-Mart's representative "will attend the [December 20, 1996] settlement conference and will participate in good faith to discuss the settlement possibilities of this case."

It is difficult to decide Ms. Johnson's motion on such a sketchy picture of the attempts to settle this case. By not later than February 23, 1998, counsel should submit a joint letter detailing all pre-trial settlement offers, including the dates on which those offers were made and withdrawn, and describing what transpired during the settlement conference conducted by United States Magistrate Judge Galvan on December 20, 1996.

IT IS THEREFORE ORDERED that:

1. "Defendant's Motion for Judgment as a Matter of Law, for a New Trial or in the alternative Remittitur" is DENIED;

2. Plaintiff's "Request for Leave of Court to File Surreply" is DENIED; and

3. By not later than February 23, 1998, counsel must submit a joint letter detailing all pre-trial settlement offers, including the dates on which those offers were made and withdrawn, and

describing what transpired during the settlement conference conducted by United States Magistrate Judge Galvan on December 20, 1996.

_____
UNITED STATES DISTRICT JUDGE